UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| FELIX B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:22-cv-00585 <br><br> District Judge David Barlow <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Felix B.[1] brought this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's (the "Commissioner") denial of his application for supplemental security income under Title XVI of the Social Security Act.[3] The Administrative Law Judge ("ALJ") determined Mr. B. did not qualify as disabled.[4]

Mr. B. argues the ALJ erred in relying upon vocational expert testimony which was inconsistent with the ALJ's residual functional capacity assessment and agency policy.[5] Mr. B. also contends the ALJ and Appeals Council judges lacked legal authority to adjudicate his claim because they were not properly appointed.[6] Because the administrative judges were properly

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by his first name and last initial only.

[2] (*See* Compl., Doc. No. 2.)

[3] 42 U.S.C. §§ 1381–1385.

[4] (Certified Tr. of Admin. R. ("Tr.") 16–24, Doc. Nos. 13–21.)

[5] (*See* Opening Br. 3, 5–9, Doc. No. 23.)

[6] (*See id.* at 3, 10–11.)

1

appointed, and any error with respect to the vocational expert's testimony is harmless, the undersigned[7] recommends the district judge affirm the Commissioner's decision.

STANDARD OF REVIEW

Section 405(g) and 1383(c)(3) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[9]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[10] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

---

[7] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 11.)

[8] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

from being supported by substantial evidence."[13] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."[15] An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[16]

In making a disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) The claimant is engaged in substantial gainful activity;

2) The claimant has a severe, medically determinable physical or mental impairment;

3) The impairment is equivalent to an impairment listed in the appendix of the relevant disability regulation, which precludes substantial gainful activity;

4) The claimant has a residual functional capacity to perform past, relevant work; and

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 1382c(a)(3)(A).

[16] *Id.* § 1382c(a)(3)(B).

    5) The claimant has a residual functional capacity to perform other work existing in significant numbers in the national economy considering the claimant's age, education, and work experience.[17]

The claimant has the burden of establishing disability in the first four steps.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.[19]

## PROCEDURAL HISTORY

Mr. B. applied for Title XVI benefits on October 2, 2019.[20] He alleged disability beginning in January 2017 due to a heart condition, hypertension, diabetes, and a sleep disorder.[21] After a hearing in October 2021,[22] the ALJ issued a decision on December 15, 2021, finding Mr. B. was not disabled.[23]

At step two of the sequential evaluation, the ALJ found Mr. B. had the severe impairments of "heart failure with recovered ejection fraction; pulmonary hypertension; diabetes mellitus, type II; cervical degenerative disc disease; asthma; and obstructive sleep apnea."[24] At step three, the ALJ found Mr. B.'s impairments did not meet or equal the severity of an

---

[17] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988).

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (Tr. 161–63.)

[21] (*Id.* at 196.)

[22] (*See id.* at 39–68.)

[23] (*Id.* at 16–24.)

[24] (*Id.* at 18.)

impairment listing.[25] At step four, the ALJ determined Mr. B. had the residual functional capacity (RFC) to perform "light work" subject to certain exertional and nonexertional limitations.[26] As relevant here, the ALJ found Mr. B. could "never be exposed to pulmonary irritants."[27] Based on this RFC, the ALJ found Mr. B. unable to perform any past relevant work.[28] But at step five, relying on a vocational expert's testimony and considering Mr. B.'s age, education, work experience, and RFC, the ALJ found Mr. B. was capable of performing other jobs existing in significant numbers in the national economy.[29] Therefore, the ALJ found he was not disabled.[30]

The Appeals Council denied Mr. B.'s request for review,[31] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. B.'s challenge to the validity of the appointments of agency judges is addressed first, followed by Mr. B.'s argument that the ALJ erred in relying on flawed vocational expert testimony at step five of the sequential analysis.

---

[25] (*Id.* at 19.)

[26] (*Id.*)

[27] (*Id.*)

[28] (*Id.* at 22–23.)

[29] (*Id.* at 23–24.)

[30] (*Id.* at 24.)

[31] (*Id.* at 1–3.)

### A. Validity of Appointments

Mr. B. contends the ALJ and Appeals Council had no legal authority to adjudicate his claim because they were not properly appointed by former Acting Commissioner Nancy Berryhill nor by any subsequent commissioner or acting commissioner.[32] Mr. B. argues Ms. Berryhill served as acting commissioner, and purported to appoint agency judges, beyond the statutory term limit of 210 days under the Federal Vacancies Reform Act[33] (FVRA).[34] Mr. B. argues the appointments made by Ms. Berryhill beyond this statutory term limit violate the FVRA and the Constitution's Appointments Clause and, therefore, have no legal validity.[35] Mr. B. seeks a remand for a de novo hearing and decision before a new, properly appointed ALJ.[36]

The FVRA provides that an acting official may serve "for no longer than 210 days beginning on the date the vacancy occurs; or . . . once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate."[37] For vacancies existing during the first sixty days after a presidential transition, the 210-day period runs from the later of ninety days after inauguration or ninety days after the date of the vacancy.[38]

---

[32] (Opening Br. 10, Doc. No. 23.)

[33] 5 U.S.C. § 3345 *et seq.*

[34] (Opening Br. 10, Doc. No. 23.)

[35] (*Id.* at 10–11.)

[36] (*Id.* at 11.)

[37] 5 U.S.C. § 3346(a)(1)–(2).

[38] *Id.* § 3349a(b).

Nancy Berryhill was designated acting commissioner shortly after President Donald Trump's inauguration in January 2017.[39] The parties agree her 210-day term expired in November 2017.[40] On April 17, 2018, President Trump nominated Andrew Saul to be the commissioner of the Social Security Administration.[41] On July 16, 2018, while Mr. Saul's nomination was pending, Ms. Berryhill ratified the appointments of all Social Security Administration ALJs and Appeals Council judges and approved them as her own.[42]

The Commissioner contends Ms. Berryhill properly resumed her service as acting commissioner upon Mr. Saul's nomination, and, therefore, the July 2018 ratification of appointments was valid.[43] Mr. B., on the other hand, contends Mr. Berryhill was not properly serving as acting commissioner at the time of the July 2018 ratification because her 210-day term expired before Mr. Saul's nomination.[44]

The Tenth Circuit has not addressed this issue, but courts in other jurisdictions have overwhelmingly sided with the Commissioner's interpretation of the FVRA. The two appellate courts which have addressed this issue—the Fourth Circuit and Eighth Circuit—both held the

---

[39] Mr. B. contends Ms. Berryhill began serving as acting commissioner on January 20, 2017, (*see* Opening Br. 10, Doc. No. 23), while the Commissioner claims she was designated on January 21, 2017, (*see* Answer Br. 12, Doc. No. 30). This distinction is immaterial to the analysis here.

[40] Mr. B. states her term expired on November 16, 2017, (*see* Opening Br. 10, Doc. No. 23), while the Commissioner states it ended on November 17, 2017, (*see* Answer Br. 12, Doc. No. 30). Again, this distinction is immaterial.

[41] (Answer Br. 12–13, Doc. No. 30.)

[42] (*See id.* at 13); *see also* Soc. Sec. R. No. 19-1p, 84 Fed. Reg. 9582, at *9583.

[43] (*See* Answer Br. 13, Doc. No. 30.)

[44] (*See* Opening Br. 10–11, Doc. No. 23.)

FVRA permitted Ms. Berryhill's service at the time of the July 2018 ratification and, therefore, the appointments were valid.[45] In *Dahle v. Kijakazi*,[46] the Eighth Circuit explained:

> Subsections 1 and 2 [of 5 U.S.C. § 3346(a)] operate independently, providing distinct limitations on when an individual who is qualified to serve under § 3345 may begin or end their service. Subsection 1 allows an individual to serve for 210 days after a vacancy occurs. Subsection 2 allows an individual to serve from the time a nomination is sent to the Senate until that nomination is no longer pending. Subsection 2 contains no time limit expressed in a number of days and speaks in no manner as to other requirements for a person to serve as an acting officer. Rather, it provides a time limit through reference to Senate action. There is simply no textual basis to imply that subsection 1 and its 210-day limit somehow restrict a person's service under subsection 2.[47]

Similarly, in *Rush v. Kijakazi*,[48] the Fourth Circuit held "§ 3346(a)(1) and § 3346(a)(2) are, by their plain text, disjunctive and independent," Ms. Berryhill was legally serving as acting commissioner in July 2018, and her ratification of the ALJs' appointments was valid.[49] District courts have overwhelmingly agreed.[50] Mr. B. cites two district court decisions from the District of Minnesota which held otherwise, but one was reversed by the Eighth Circuit in *Dahle* after

---

[45] *See Rush v. Kijakazi*, 65 F.4th 114, 124 (4th Cir. 2023); *Dahle v. Kijakazi*, 62 F.4th 424, 429 (8th Cir. 2023).

[46] 62 F.4th 424.

[47] *Id.* at 427–28.

[48] 65 F.4th 114.

[49] *Id.* at 117, 124.

[50] *See, e.g.*, *Jerri Mabe M. v. Kijakazi*, No. 22-4026-JWL, 2023 U.S. Dist. LEXIS 87575, at *6–7 (D. Kan. May 18, 2023) (unpublished); *Williams v. Kijakazi*, No. 1:21-cv-00141-GCM, 2022 U.S. Dist. LEXIS 106466, at *7–8 (W.D.N.C. June 15, 2022) (unpublished) ("The great majority of courts that have addressed this issue agree that § 3346(a)(2) contains a spring-back provision that enabled Ms. Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018." (internal quotation marks omitted)).

Mr. B.'s opening brief was filed, and the other is no longer good law based on the same decision.[51]

Based on the overwhelming weight of authority and the specific reasoning set forth in *Dahle* and *Rush*, Ms. Berryhill was properly serving as acting commissioner under the FVRA when she ratified the appointments of agency judges in July 2018. Therefore, the appointments of the ALJ and Appeals Council judges who adjudicated Mr. B.'s claim were valid.

**B.  Reliance on Vocational Expert Testimony**

Mr. B. argues the ALJ erred at step five by relying on vocational expert testimony which was inconsistent with the RFC assessment and with agency policy.[52]

At the hearing, the ALJ asked a vocational expert to testify based on a hypothetical question consistent with the ALJ's ultimate RFC determination, including the limitation that Mr. B. could "never be exposed to pulmonary irritants."[53] Presented with this hypothetical scenario, the vocational expert testified Mr. B. could perform four occupations: merchandise marker, cashier II, housekeeping/cleaner, and electrical accessories assembler.[54] Mr. B.'s counsel asked the vocational expert to explain how the housekeeping/cleaner occupation was consistent with the limitation regarding exposure to pulmonary irritants.[55] The vocational expert responded: "[I]t would not be concentrated pulmonary irritants. It is light housekeeping, mostly minor

---

[51] *See Brian T. D. v. Kijakazi*, 580 F. Supp. 3d 615 (D. Minn. 2022), *rev'd*, 62 F.4th 424 (8th Cir. 2023); *Richard J.M. v. Kijakazi*, No. 19-cv-827 (KMM), 2022 U.S. Dist. LEXIS 58606 (D. Minn. Mar. 30, 2022) (unpublished).

[52] (Opening Br. 3, 5–9, Doc. No. 23.)

[53] (Tr. 19, 62.)

[54] (*Id.* at 62, 66.)

[55] (*Id.* at 64–65.)

9

dusting and wiping and sanitizing things, generally in a hotel environment, where they're not going to use harsh chemicals in the rooms that people are using."[56] The ALJ asked the vocational expert if all her testimony was consistent with the information in the Dictionary of Occupational Titles (DOT) and she confirmed it was. [57] The ALJ then relied on the vocational expert's testimony in finding, at step five, that Mr. B. could perform work existing in significant numbers in the national economy, including all four occupations identified by the vocational expert at the hearing.[58]

      Mr. B. argues the vocational expert's testimony regarding the housekeeping/cleaner occupation is inconsistent with the RFC's restriction on exposure to pulmonary irritants.[59] Specifically, he contends the vocational expert's testimony that a housekeeping/cleaner job would not involve exposure to "concentrated pulmonary irritants" is inconsistent with the ALJ's finding that Mr. B. could never (without qualification) be exposed to pulmonary irritants.[60] Thus, Mr. B. argues the ALJ erred in finding he was capable of performing the housekeeping/cleaner job.[61] Mr. B. also contends this discrepancy taints the vocational expert's testimony regarding other occupations, because it is unclear whether the vocational expert properly applied a complete restriction on pulmonary irritants when testifying as to the other

---

[56] (*Id.* at 65.)

[57] (*Id.* at 64, 66.)

[58] (*Id.* at 23–24.)

[59] (Opening Br. 5–6, Doc. No. 23.)

[60] (*See id.*)

[61] (*See id.*)

occupations.[62] Finally, Mr. B. contends the ALJ's reliance on the vocational expert's testimony is inconsistent with agency policy set out in Social Security Ruling (SSR) 85-15 regarding the impact of environmental restrictions.[63]

SSR 85-15[64] provides: "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."[65] But "[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions."[66] "Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [vocational expert]."[67]

SSR 85-15 does not mandate a finding of disability based on a complete restriction on exposure to irritants or pollutants. As an initial matter, SSR 85-15 applies only to cases "involving the evaluation of solely nonexertional impairments."[68] Here, Mr. B.'s RFC included both exertional and nonexertional limitations.[69] Moreover, while SSR 85-15 indicates the impact

---

[62] (*See id.* at 7–8.)

[63] (*See id.* at 8.)

[64] Soc. Sec. R. No. 85-15, 1985 SSR LEXIS 20.

[65] *Id.* at *22.

[66] *Id.*

[67] *Id.*

[68] *Id.* at *4.

[69] (*See* Tr. 19.)

of a restriction permitting very little exposure to environmental irritants is "considerable," it does not state all work is precluded. Under these circumstances, the ALJ did not err in utilizing a vocational expert to determine whether Mr. B. was capable of performing other work at step five.

Even assuming the vocational expert's testimony regarding the housekeeping/cleaner occupation was inconsistent with the RFC's restriction on exposure to pulmonary irritants, any error by the ALJ in relying on this occupation was harmless. The Tenth Circuit recognizes an ALJ's erroneous inclusion of one or more jobs is harmless where there remains a significant number of other jobs in the national economy which the claimant can perform.[70] Here, the ALJ found Mr. B. could perform three other occupations, and Mr. B. has not demonstrated any error with respect to these occupations. The DOT entries for "marker" and "cashier II" state that "atmospheric conditions" are not present[71]—language which has been interpreted to mean the occupation does not involve exposure to pulmonary irritants.[72] The DOT entry for "electrical assembler" does not address environmental restrictions[73]—which has been similarly interpreted as an indication that none are present.[74] Mr. B. points to no other authority or record evidence suggesting these other occupations involve any level of exposure to pulmonary irritants. Thus, even if the vocational expert's testimony regarding "concentrated" pulmonary irritants in the

---

[70] *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished); *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

[71] DOT 209.587-034 (marker); DOT 211.462-010 (cashier II).

[72] *See Pineda v. Berryhill*, No. 18-cv-02901-EMC, 2019 U.S. Dist. LEXIS 551, at *9–10 (N.D. Cal. Jan. 2, 2019) (unpublished); *Williams v. Colvin*, No. CV 15-01743-RAO, 2015 U.S. Dist. LEXIS 161113, at *14–15 (C.D. Cal. Nov. 30, 2015) (unpublished).

[73] DOT 729.687-010.

[74] *See Williams*, 2015 U.S. Dist. LEXIS 161113, at *14–15.

housekeeping/cleaner occupation was inconsistent with the RFC, there is simply no basis to conclude this tainted the analysis with respect to the other identified occupations.[75]

Together, the occupations of merchandise marker, cashier II, and electrical assembler comprise 1,250,000 jobs available in the national economy.[76] The Tenth Circuit has found far fewer jobs constituted a "significant number" of jobs in the national economy for purposes of a harmless error analysis.[77] Indeed, the cashier II occupation alone comprises 1,000,000 jobs,[78] which is more than sufficient under Tenth Circuit precedent. Therefore, any error in relying on the housekeeping/cleaner occupation was harmless. The ALJ's step five finding that Mr. B. was capable of performing other work existing in significant numbers in the national economy was supported by substantial evidence, based on the other occupations the vocational expert identified.

RECOMMENDATION

The undersigned RECOMMENDS the district judge AFFIRM the Commissioner's decision. The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object. Any objection to this Report and Recommendation must be filed

---

[75] *Cf. Pineda*, 2019 U.S. Dist. LEXIS 551, at *13–14 ("While it seems likely that a housekeeper would use cleaners, and it is even likely that the cleaners would produce some odors or fumes, it is far more speculative to say that a fast-foods worker or cashier would be exposed to fumes, odors, dusts, and so forth.").

[76] (Tr. 23–24.)

[77] *See Shockley v. Colvin*, 564 F. App'x 935, 940–41 (10th Cir. 2014) (unpublished) (finding harmless error where 215,000 jobs existed in the national economy); *Chrismon v. Colvin*, 531 F. App'x 893, 899–900 (10th Cir. 2013) (unpublished) (212,000 jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (152,000 jobs).

[78] (Tr. 24.)

within fourteen days of service.[79]  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 10th day of July, 2023.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[79] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).